John E. Reger and Nedra M. Reger v. Commissioner.
Reger v. Commissioner
Docket No. 48481.
United States Tax Court
T.C. Memo 1956-89; 1956 Tax Ct. Memo LEXIS 206; 15 T.C.M. (CCH) 473; T.C.M. (RIA) 56089; April 17, 1956
*206 Raymond E. Trafelet, Esq., for the petitioners. Edward L. Newberger, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against petitioners for the years 1947, 1948 and 1949 in the amounts of $6,767.34, $3,615.86 and $4,222.96, respectively. The question for decision is whether mortgage notes held by petitioners became worthless in 1947, 1948 and 1949 entitling petitioners to a deduction for bad debts in each of those years. Questions relating to a deduction for "Rental Property Maintenance" and "Miscellaneous expenses" have apparently been abandoned since petitioner has offered no evidence with respect to these matters. Findings of Fact Some of the facts have been stipulated and are found as stipulated. John and Nedra Reger are husband and wife and reside in Chicago, Illinois. They filed joint income tax returns for 1947, 1948 and 1949 with the collector of internal revenue for the first district of Illinois. On September 5, 1929, John Reger, sometimes referred to as petitioner, acquired from the Schiff Trust & Savings Bank, for a total consideration of $11,896.25 a *207 note dated September 5, 1928, for $13,000, with interest at 6 per cent payable semi-annually, and extended by an extension of loan dated "in" September 1929. The note and extension thereof were signed by Thomas Nicholson and Demetra T. Nicholson, his wife; Nicholas Brahas and Benie N. Brahas, his wife; Demetrius Karos and Fofo D. Karos, his wife; and were secured by a trust deed to the Chicago Title and Trust Company of Chicago on certain properties in "Schapp Subdivision." [1] Under the extension, payment of the note was due on September 5, 1931. No payments of interest were made on the note and the makers defaulted on the due date thereof. No foreclosure proceedings were instituted by the petitioner. His only contact was with Nicholas Brahas; he did not know the other parties to the note. Brahas had a large holding of real estate in 1929 but in 1933 he went through bankruptcy. Petitioner's indebtedness was listed among the liabilities in the bankruptcy proceeding but he did not realize anything upon the conclusion of those proceedings. In 1947 the outstanding taxes against the property, exclusive of penalties, amounted to $6,549.35, and with penalties of $7,699.61 the total amount *208 assessed was $14,248.96. The fair market value of the property in 1947 was $55 per front foot, or approximately $5,550. On May 20, 1929, the petitioner acquired from Herbert Frederickson, for a total consideration of $11,040, a note dated May 20, 1929, for $12,000, with interest at 6 per cent payable semi-annually. The note was secured by a trust deed to the Chicago Title and Trust Company of Chicago on certain properties in "the Village of Jefferson." Payment of the note was due on May 20, 1931. One or two payments of interest were made, but payment of the principal was defaulted. Foreclosure proceedings were not instituted but on May 28, 1931, judgment was taken against Herbert Frederickson. No collections were made and after seven years the judgment was extended again for another seven years, after which no further action was taken. In 1947 the outstanding taxes assessed against the property, exclusive of penalties, amounted to $4,686.98, and with penalties of $5,540.05 and other costs of $19.30, the grand *209 total outstanding against the property amounted to $10,246.33. The fair market value of the property in 1947 was $40 per front foot, or approximately $4,000. On February 1, 1929, petitioner acquired from Samuel H. Sternfeld and Etta Sternfeld, for a total consideration of $5,000, two notes for $3,000 each, payable one year after date, with interest at 6 per cent to be paid semi-annually. The notes were each secured by trust deeds to petitioner on certain properties in "Taylors Subdivision." Some interest was paid on these notes but the payment of principal of both notes was defaulted on the due date. Foreclosure proceedings were not instituted and the petitioner was not able to make collection of the principal of the notes from the Sternfelds. In 1947 the total outstanding taxes assessed against the property, exclusive of penalties, was $5,219.24, and with penalties of $6,318.94 and other costs of $26.40, the total outstanding against the property was $11,564.38. The fair market value of the properties in 1947 was $50 per front foot, or approximately $5,000. On their return for the taxable year ended December 31, 1947, petitioner reported long-term losses as to the notes above, *210 as follows: Gross
Cost or
Loss to be
Date
Date
Sales
Other
Taken Into
Kind of Property
Acquired
Sold
Price
Basis
Loss
Account
Mortgage-vacant
9/ 5/29
12/1/47
0
$12,000
$12,000
$6,000
Mortgage-vacant
5/20/29
12/1/47
0
11,000
11,000
5,500
Mortgage-vacant
2/ 1/29
12/1/47
0
5,000
5,000
2,500
For a consideration of $9,000, petitioner, on June 27, 1929, acquired from Nicholas Pappas and Nicholas Brahas one note payable one year after date, with interest at 6 per cent semi-annually. The note was secured by trust deeds on two lots in "L. E. Crandell's Subdivision"; some interest was paid on the note but the principal was defaulted on the due date. No foreclosure proceedings were instituted. For a consideration of $4,500, the petitioner, on February 24, 1930, acquired from Julia G. Maher one note, payable within one year, with interest at the rate of 7 per cent semi-annually. This note was secured by a trust deed on a lot in "Thomas J. Grady's sixth Green Briar addition to North Edgewater." Some interest was paid on this note but the principal was defaulted on the due date. No foreclosure proceedings were instituted. *211 On October 3, 1929, petitioner acquired from Emil G. Skoglund two notes, one for a consideration of $3,000 and one for a consideration of $5,500, both payable within two years after date, with interest at the rate of 7 per cent semi-annually. Both notes were secured by trust deeds, one on one lot and the other on two lots in "W. E. Kaiser Company's" first and second additions to "Arcadia Terrace." Some interest was paid on both notes but the principal was defaulted on both notes on the due date. No foreclosure proceedings were instituted for either note. On their income tax returns for the year ended December 31, 1948, petitioners reported a long-term capital loss in the aggregate amount of $22,000, represented by the above four notes and took $11,000 thereof into account in arriving at their taxable net income. For approximately $3,700, petitioner, on January 16, 1930, acquired from Marshall V. Wheeler and Edyth A. Wheeler one note payable within two years after date, with interest at the rate of 7 per cent semi-annually. This note was secured by a trust deed on a lot in "Keeney's Highland addition to Austin." For $2,800, petitioner, on May 20, 1930, acquired from James Pagoujis *212 and Anna Pagoujis one note payable in two years after date, with interest at the rate of 6 per cent payable semi-annually. This note was secured by a trust deed on a lot in "Fred W. Brummel and Co.'s Lincoln Bryn Mawr, Western Subdivision." On the notes so purchased from the Wheelers and the Pagoujis some interest was paid but the principal was defaulted. No foreclosure proceedings were instituted. On November 10, 1927, petitioner acquired from Frank C. McCummons and Ella McCummons one note for $1,900, payable within one year, at 6 per cent interest per annum. This note was secured by a trust deed on a lot in the "Village of Jefferson." On September 20, 1928, the petitioner acquired from the McCummons another note for $2,300 payable within one year at 6 per cent interest per annum, which was secured by a trust deed on two lots in "Kinsey's Jefferson Park and Forest Glen Subdivision." No interest was paid on either note and the principal was defaulted on the due date. No foreclosure proceedings were instituted for either note. On their return for the taxable year ended December 31, 1949, petitioners reported a loss on the sale or exchange of "Property Other Than Capital Assets" *213 in the amount of $10,700 as follows: Date Acquired
Date Sold
Cost or
Kind of Property
Mo.
Day
Year
Mo.
Day
Year
Other Basis
Mortgage loan
1
16
30
12
31
49
$ 3,700.00
Mortgage loan
5
20
30
12
31
49
2,800.00
Mortgage loan
11
10
27
12
31
49
1,900.00
Mortgage loan
9
20
28
12
31
49
2,300.00
Totals
$10,700.00
The petitioner sold only one mortgage note in 1947. Its cost was $1,500 when he purchased it in 1930 and he sold it for $500 in 1947. He did not buy or sell any notes in the years 1948 and 1949. Except as to the loss sustained on the sale of the one mortgage note in 1947, the respondent, in the determination of the deficiencies herein, disallowed the losses claimed by petitioners on their returns in respect of the notes above. Opinion In section 23(k) of the Internal Revenue Code of 1939 it is provided that in computing net income there shall be allowed as deductions "debts which become worthless within the taxable year." It is thus apparent and it is well settled that the year of deduction is the year when the debt actually became worthless and not when the taxpayer may have ascertained *214 worthlessness or have decided to charge the debt off on his accounts or records and claim a deduction therefor in his income tax return. Having claimed the above losses in reporting their net income for the years indicated, the burden is on the petitioners to show that the notes did become worthless in the years claimed. The proof of record does not go beyond the facts above set forth. On those facts it might reasonably be concluded that most if not all of the notes in question became worthless long prior to the year 1947, the first of the years here involved and certain it is that the facts above fall far short of showing or demonstrating that the debts became worthless in the years claimed. Decision will be entered for the respondent. Footnotes
1. All the properties upon which the various mortgage notes were secured appear to have been empty lots in Chicago but the record is not clear as to their exact nature.↩